**CASTELAZO & ASSOCIATES, CARRARA MARBLE CO. OF CALIF. et al.,**

v.

**UNITED STATES.**

C.D. 3872; Protest Nos. 62/5312–66586, etc.

United States Customs Court,
First Division.
July 24, 1969.

Glad & Tuttle, Los Angeles, Cal. (Robert Glenn White and Edward N. Glad, Los Angeles, Cal., of counsel) for plaintiffs.

William D. Ruckelshaus, Asst. Atty. Gen., (Arthur E. Schwimmer and Mollie Strum, New York City, trial attys.), for defendant.

Before WATSON, MALETZ, and RE, Judges.

WATSON, Judge:

The merchandise involved in these cases which were consolidated for trial consists of imported travertine slabs, classified as stone suitable for use as monumental or building stone and assessed with duty at the rate of 21 per centum ad valorem under paragraph 234(c) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas.Dec. 150, T.D. 54108. In their imported condition the slabs in question were rectangular in shape, in uniform thicknesses of 2 inches or less.

---

Plaintiffs contend that these slabs are not such stone as Congress provided for in said paragraph 234(c), for the reason that, as understood and comprehended at the time of enactment, the term "building stone" meant only such stone as was suitable for use as a structural part of a building.

It is urged that travertine slabs of the type in issue are not suitable for use as structural stone because of their extreme thinness and moreover, that such travertine slabs were not in existence when the Tariff Act of 1930 became law.

The pertinent statutory provisions read as follows:

Paragraph 234(c), Tariff Act of 1930 as modified by T.D. 54108:

Freestone, sandstone, limestone, lava and all other stone suitable for use as monumental or building, stone, except marble, breccia, and onyx, not specially provided for, hewn, dressed, or polished, or otherwise manufactured ...............21% ad val.

Paragraph 214, Tariff Act of 1930, as modified by T.D. 51802:

Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specially provided for, whether susceptible of decoration or not (except synthetic materials of gem stone quality, such as corundum and spinel, and articles and wares composed wholly or in chief value of such materials, and except marble chip and granite):

If not decorated in any manner:

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

Other ....................................15% ad val.

Three witnesses testified for the plaintiffs and one for the defendant. Also received into evidence were two exhibits, plaintiffs' exhibit 1, an illustrative piece of travertine $7/8$ inch thick, and defendant's collective exhibit A, pages 591 and 592 of "Mineral Commodities of California, Bulletin 176" published by the State of California, Department of Natural Resources, which discussed dimension stone and its uses.

Plaintiffs' first witness was Mr. Rene Maassen, president of Quality Marble and Granite Company, one of the plaintiffs herein. Mr. Maassen described the imported travertine slabs as sawn slabs, unpolished. (R.10.) The slabs are quarried in Italy and exported to the United States in thicknesses of under 2 inches. He stated that 95 percent of the sawn travertine imported into this country is used for veneering work. (R.14.) Mr. Maassen defined "building stone" as being weight bearing and a structural member of the building. Veneer stone because of its thinness cannot be used as weight bearing, structural stone. (R. 16.)

On cross-examination Mr. Maassen stated that there is also a nonstructural building stone which does not have weight bearing characteristics, and that veneer stone is such a nonstructural building stone. (R.26–27.)

Mr. Frederick Cordova, president of Carrara Marble Company of California, was called as plaintiffs' second witness. He testified that most of the imported travertine is used for veneer work on buildings. (R.33.) He stated that building stone is not necessarily a weight bearing structural unit but that it does have a thickness of over 2 inches. (R.37.) He further testified that travertine veneer came into existence 30 to 40 years ago, but was not used very much until after World War II. (R.44.)

On cross-examination Mr. Cordova agreed that there are two types of building stone, structural and nonstructural. Nonstructural building stone does not necessarily bear weight and is used for ornamentation and he further agreed that the merchandise before this court is such a nonstructural building stone. (R.46.)

Mr. James R. Townsend, a geologist employed by the United States Army, Corps of Engineers, testified for the government. He stated that veneer is a type of ornamental, nonstructural building stone which can be used on the inside as well as the outside of a building. (R.58.) Moreover, the dimensions of the travertine at bar, make it unsuitable for use as structural building stone because such stone is used for its strength, while nonstructural stone supports only its own weight and has no structural value. (R.61.)

Plaintiffs called Mr. Patrick J. Ryan, an importer and wholesaler of stone, as a rebuttal witness. Mr. Ryan testified that he has not heard of nonstructural building stone and that his understanding of the term "building stone" is stone which is generally 3 or more inches thick and is used structurally in buildings. (R.78–79). He stated that he deals in travertine slabs 2 inches thick or less and that such merchandise has come into use after World War II.

It is plaintiffs' contention that travertine stone in the dimensions of that at bar was not commonly understood as being building stone at the time of the enactment of paragraph 234(c). They claim that since the process by which travertine is cut into thin slabs was not invented until the late 1930's, Congress could not have known that such a product as nonstructural building stone would come into existence. Therefore, they conclude that the term "building stone," as it was known in 1930, meant only stone which is structural stone capable of bearing weight, and that the same definition of the term must still apply today. Davies Turner & Co. v. United States, 45 CCPA 39, C.A.D. 669 (1951).

In the *Davies* case, *supra*, our appellate court held that:

\* \* \* The meaning of *eo nomine* provisions is to be determined as of the date of enactment but, when so determined, that meaning will embrace all subsequently created articles which fall within it. Tariff acts, therefore, are made for the future in the sense that they embrace articles not in existence at the time of enactment, *but the meaning of words used in such acts is fixed at the time of enactment and does not fluctuate as the meaning of words might subsequently vary.* [Emphasis added.]

So holding they ruled that the term "bent-wood" furniture had a specific meaning at the time of the enactment of the Tariff Act of 1930, and the later invention of a laminating process to make furniture similar to "bent-wood" furniture would not make such items "bent-wood" furniture within the intendment of the statute.

While it is true that under the principle of the *Davies* case the term "building stone" must be defined as it was when paragraph 234(c) was enacted, it does not necessarily follow that that term then did not encompass stone slabs in dimensions similar to those at bar, for it seems clear that at and prior to 1930, such stone slabs were in existence.

In Lombard & Co. v. United States, 19 Treas.Dec. 410, T.D. 30546 (1910), slabs of sandstone 3 to 5 feet long and varying in thickness from 1 to 2½ inches, about 95 percent of them being 1 inch thick, were held properly classified as "Freestone, granite, sandstone, limestone, and all other monumental or building stone, * * *, hewn, dressed, or polished, or otherwise manufactured," under paragraph 114 of the Tariff Act of 1909. The plaintiff there had sought to have the stone classified as grindstones but the Board of Appraisers stated that as they were not shaped as grindstones, there was no showing that the slabs would not be susceptible of any use other than as building stones under paragraph 114.

Further evidence of the existence and commercial availability of thin stone slabs prior to 1930 comes in the form of Treasury Decision 37932 at 36 Treas. Dec. 190 (1919). There reference was made to an importation of sawn stone slabs in sizes from 2 to 10 feet square and varying in thickness from ¾ to 4 inches. It was therein stated that: "It appears however, from the report of the appraiser at New York, that the slabs now under consideration may be used for interior decoration of various kinds, such as moldings, surbases, wainscoting, etc., * * *, which are classified as stone, manufactured, suitable for use as building stone * * *."

Moreover, in 1929 at the Tariff Readjustment Hearings before the Committee on Ways and Means of the House of Representatives, Volume 2, page 1697, a brief was offered by a domestic producer of travertine which described the veneering quality of that stone as it was used at that time. There, the Florida Travertine Corporation, Bradenton, Florida, stated:

Travertine stone, heretofore imported from Italy, dates back to the early Roman days, and we find that the famous Colosseum, as well as the equally famous old cathedral of St. Peters, were built of travertine stone quarried in Italy. During the ages ensuing there was very little of this stone used until approximately 8 to 10 years ago, when it gradually came into use for floor work, and later for *wall veneering*. The architectural trend toward Italian and Spanish designs, so strongly developed during the past few years, has been largely instrumental in bringing about a rather unprecedented yearly increase in its use, but fundamentally we find several real reasons for its present great demand and popularity, not only amongst the architectural profession but the building trades and accoustical engineers as well. * * * [Emphasis added.]

We advert to the latter two references with the knowledge of their limitations as competent proof of the facts set forth therein. However, we consider them useful as sources from which we may conclude that the materials which they describe were in fact in existence at the time of their respective writings.

Thus it seems clear, contrary to plaintiffs' claim, that travertine and other types of stone, in thin slabs, were commercial realities for many years prior to the enactment of the Tariff Act of 1930, and that Congress must have been apprised of the existence of this material and its use in buildings when it provided for "stone suitable for use as * * * building stone." Consequently the major premise upon which plaintiffs' contention rests, that thin slabs of travertine and other stone were not known to commerce and industry until the late 1930's, is without substance.

Moreover, the fact that such stone may be used on the inside of a building rather than on its outside surface would seem to have no bearing on its classification under this paragraph. In United States v. Grasselli Chemical Co., 3 Ct. Cust.Appls. 486, T.D. 33123 (1913), the appellate court ruled that hewn lava stone cut into special shapes and used to line the interior of chimneys of factories

was properly classified as building stone under paragraph 114 of the Tariff Act of 1909, the predecessor of paragraph 234(c). The court stated (p. 487) that:

There is no limitation of the term "building stone" in the paragraph. The term is not restricted to such stones as are used for the outer walls of buildings. The exception from the provisions of the paragraph of marble, breccia, and onyx would indicate that any stone other than these excepted, used for *interior decoration*, would be within the provisions of the paragraph. Nor does any good reason occur to us why *any stone* used in the interior of a building would not be properly designated as building stone. * * * [Emphasis added.]

■■ With this above reasoning we strongly concur. Therefore, we hold that the term "building stone," as used in paragraph 234(c) of the Tariff Act of 1930, as modified by T.D. 54108, is not restricted to those stones capable of bearing weight and being structurally part of the building, but rather, the term encompasses all types of stone, ornamental or functional, structural or nonstructural, so long as said stone is used in or on a building. The claims in the instant protests are overruled.

Judgment will be entered accordingly.